STATE OF NORTH CAROLINA v. SHEREE VONELLE SUDDRETH BYRD AND JOSEPH ALLEN BYRD

No. 159A83

(Filed 9 August 1983)

**Homicide § 21.9; Parent and Child § 2.2 — violation of child abuse statute — involuntary manslaughter — insufficient evidence**

    The State's evidence was insufficient for the jury to find that the death of defendant's 25-day-old child was proximately caused by defendants' violation of the child abuse statute, G.S. 14-318.2, and that defendants were thus guilty of involuntary manslaughter of the child, where the evidence showed only that the child died as a result of blunt trauma to the head and that the child could not yet sit up and therefore could not have caused the injuries to himself, but there was no evidence that the child was an example of the "battered child syndrome" so as to give the State the benefit of the inference that the injuries were intentionally inflicted by the child's caretakers; evidence that defendants' other child had suffered from the "battered child syndrome" could not furnish the basis for an inference that the injuries to the child in question were non-accidentally inflicted, and the evidence was insufficient to show that the child's injuries were inflicted "other than by accidental means"; the evidence raised only a suspicion or conjecture that defendants were responsible for the child's injuries since there were other adults living in the household who had the opportunity to inflict the injuries either accidentally or intentionally; and the evidence was insufficient to show that defendants "created or allowed to be created a substantial risk of physical injury" to the child.

APPEAL by defendants pursuant to G.S. 7A-30(2) from a decision of the Court of Appeals, opinion by *Webb, Judge*, with

*Hedrick, Judge,* concurring and *Becton, Judge,* dissenting, 60 N.C. App. 624, 300 S.E. 2d 49 (1983), finding no error in the judgment entered by *Snepp, Judge,* at the 18 January 1982 Session of CALDWELL Superior Court.

Defendants Sheree Vonelle Suddreth Byrd and Joseph Allen Byrd were charged by indictments, proper in form, with the second-degree murder of their infant son, Jo Van Byrd. Each defendant entered a plea of not guilty and the cases were consolidated for trial. At the conclusion of the evidence the trial judge submitted the possible verdicts of guilty of involuntary manslaughter or not guilty.

At trial, the State offered evidence tending to show that on 25 January 1981, at about 7:40 a.m., Mr. and Mrs. Byrd and an unidentified male came to the Caldwell Memorial Hospital Emergency Room. Mrs. Byrd was carrying the body of her 25-day-old infant son, Jo Van Byrd. The child was dead and rigor mortis had set in. Both parents were very upset. The child was taken to the cardiac room where resuscitation efforts were made without success. It was the opinion of Dr. Abernathy, who was in charge at that time, that the baby had been dead for over an hour. Dr. Abernathy and the attending nurse did not observe any signs of trauma upon the child's body. Dr. Abernathy talked to Mrs. Byrd very briefly about the circumstances of the death. She told him that she had wakened at about 6:00 a.m. to feed the baby and noticed that he didn't breathe correctly. She thought at that time that milk might have been coming out of his nose. She also told the doctor that the baby was sleeping in a bed with her and her husband.

Mrs. Verna DeVane, a schoolteacher in Caldwell County, testified that she visited in the Byrd home on three occasions beginning around 2 January 1981. Although the house was cold, "the baby seemed to be fine, everything calm and peaceful." She stated that she had known Mrs. Byrd since she was a small girl and that Mrs. Byrd had a very good reputation in the community. She had only known Mr. Byrd for a few years and as far as she knew, his reputation was good.

Dr. John Bauer, qualified as an expert in pathology, testified that he performed an autopsy on the body of Jo Van Byrd on 26 January 1981. He observed no external trauma, but discovered a

hemorrhage under the scalp in the back of the head and a film of blood around the cover of the brain. He also noted a spinal cord deformity and concluded that the child died from a spontaneous rupture of the blood vessels beneath the arachnoid membrane.

Mr. H. H. Groome, Jr. testified that he was an attorney and represented the Caldwell County Department of Social Services. He stated that the Department had custody of another of defendants' children, YaVonka Byrd, and that the Department had denied return of custody or overnight visitation to the parents because of certain questions concerning Jo Van's death. Mr. Groome testified that he talked with defendants on 19 June 1981 concerning custody of YaVonka. Mrs. Byrd told him that defendants and Jo Van Byrd had been residing in the home of Mrs. Byrd's mother. Mrs. Byrd's brother and uncle also resided there. All of these persons were present in the home the night before the child's death. Mr. Groome further stated that Mrs. Byrd had told him that she and her husband went to bed at about 11:30 p.m. on the night before the child's death and that the baby slept in the bed with them. The baby was alive at 3:00 a.m. but at 6:30, Mrs. Byrd discovered that the child was not breathing and took him to the hospital. Prior to going to the hospital, her husband attempted mouth-to-mouth resuscitation on the baby without success.

Pursuant to a court order, the body of Jo Van Byrd was exhumed on 4 September 1981 and removed to Chapel Hill for further examination by Dr. John Butts of the Medical Examiner's Office.

Dr. Butts, a medical examiner and Senior Assistant Chief Medical Examiner for the State of North Carolina, was qualified as a medical expert in pathology. Dr. Butts testified that he noted a series of breaks in the first through the sixth ribs on the child's right side, which in his opinion had been broken approximately one to two weeks prior to the child's death. He also stated that in his opinion Jo Van Byrd's death could not have been caused by a vascular malformation. Dr. Butts found three areas of discoloration on the child's scalp. He testified that in his opinion the more severe bruise at the back of the head caused damage to the brain. He further testified that in his opinion the bruise was the result of "blunt trauma—force applied to the child's head or child's head

applied to some blunt object with force." In his opinion, Jo Van Byrd died as a result of "blunt trauma to the head."

Dr. Sarah Sinal testified that on 6 December 1978 she examined YaVonka Byrd, who was then one month old. She found a bruise over the child's right eye, bleeding in back of both eyes, and small healing lacerations on the lower right leg. There were also linear shaped scratches on the child's back and a bruise on her breastbone. There was bulging of the interior frontal area and a needle aspiration produced blood from the space between the skull and brain. There were no visible exterior bruises on the child's head.

On 10 May 1979, she talked to defendants concerning another examination of YaVonka. She advised them that her examination of the child disclosed bleeding on the brain as well as several fractured ribs. In her opinion, the brain injury was caused by trauma. Defendants stated to her that they were not aware of the injuries and that the child had only been in their custody for "a couple of weeks." The child was six months old at that time.

On 28 June 1979, the child was again examined by Dr. Sinal and this examination disclosed a deep bruise to the left side of the child's forehead. There were lesion blister-type injuries on the child's back from her shoulders to her buttocks. There were also scratches on the back and a deep bruising-type injury to the buttocks. The doctor further testified that in her opinion, YaVonka Byrd represented "an example of a Battered Child Syndrome."

At the conclusion of the State's evidence, each defendant moved for a dismissal and the trial judge denied the motions. Defendants offered no evidence.

Both defendants were convicted of involuntary manslaughter and appealed from judgments imposing upon each of them a prison sentence for a maximum term of ten years and a minimum term of eight years.

The Court of Appeals found no error, rejecting defendants' contention that there was insufficient evidence from which the jury could find that each of them intentionally violated G.S. 14-318.2(a) and that the violation was the proximate cause of Jo Van Byrd's death. Judge Becton agreed with the majority that defendants' motions to dismiss were properly denied, but found

prejudicial error in the district attorney's closing argument and in the admission of evidence tending to show that defendants' other child suffered from the "battered child syndrome."

*Rufus L. Edmisten, Attorney General, by Nonnie F. Midgette, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Malcolm R. Hunter, Jr., Assistant Appellate Defender, for defendant-appellant Sheree Vonelle Suddreth Byrd.*

*W. C. Palmer for defendant-appellant Joseph Allen Byrd.*

BRANCH, Chief Justice.

Each defendant assigns as error the trial judge's denial of their respective motions to dismiss at the close of the State's evidence.

G.S. 14-318.2 provides:

(a) Any parent of a child less than 16 years of age, or any other person providing care to or supervision of such child, who inflicts physical injury, or who allows physical injury to be inflicted or who creates or allows to be created a substantial risk of physical injury, upon or to such child by other than accidental means is guilty of the misdemeanor of child abuse.

(b) The misdemeanor of child abuse is an offense additional to other civil and criminal provisions and is not intended to repeal or preclude any other sanctions or remedies, and is punishable as provided in G.S. 14-3(a).

This Court considered the above-quoted statute in *State v. Fredell,* 283 N.C. 242, 195 S.E. 2d 300 (1973). We there stated:

This statute [14-318.2] provides for three separate offenses: If the parent by other than accidental means (1) inflicts physical injury upon the child, (2) allows physical injury to be inflicted upon the child, or (3) creates or allows to be created a substantial risk of physical injury.

*Id.* at 244, 195 S.E. 2d at 302.

Involuntary manslaughter is "the unlawful and unintentional killing of another human being without malice . . . which prox-

imately results from the commission of an unlawful act not amounting to a felony or not naturally dangerous to human life, or from the commission of some act done in an unlawful or culpably negligent manner, or from the culpable omission to perform some legal duty." *State v. Everhart*, 291 N.C. 700, 702, 231 S.E. 2d 604, 606 (1977). Thus, a violation of G.S. 14-318.2 proximately resulting in death would support a conviction of involuntary manslaughter.

Decision of the question presented by this assignment of error requires restatement of the often stated rule as to how evidence must be considered by a trial judge upon a motion to dismiss.

The trial judge must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. Exculpatory statements offered by the State are also properly considered by the court. 4 Strong's N.C. Index 3d, Criminal Law § 104. The question for the court is whether there is substantial evidence to support a jury finding that the offense charged in the bill of indictment was committed, and that the defendant was the perpetrator or one of the perpetrators of that offense. *State v. Roseman*, 279 N.C. 573, 184 S.E. 2d 289 (1971); *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967). On the other hand, if the evidence so considered raises no more than a suspicion or a conjecture that the offense charged in the indictment has been committed or that the defendant committed it, then the evidence is not sufficient to carry the case to the jury. *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971).

We note that in this prosecution the State apparently relied heavily upon the theory of the "battered child syndrome."

The landmark case in North Carolina on the "battered child syndrome" is *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). In *Wilkerson*, Justice Exum quoted with approval the following passage from *People v. Jackson*, 18 Cal. App. 3d 504, 507, 95 Cal. Rptr. 919, 921 (1971):

　　　A finding, as in this case, of the "battered child syndrome" is not an opinion by the doctor as to whether any particular person has done anything, but, as this doctor in-

dicated, "it would take thousands of children to have the severity and number and degree of injuries that this child had over the span of time that we had" by accidental means. In other words, the "battered child syndrome" simply indicates that a child found with the type of injuries outlined above has not suffered those injuries by accidental means. This conclusion is based upon an extensive study of the subject by medical science. The additional finding that the injuries were probably occasioned by someone who is ostensibly caring for the child is simply a conclusion based upon logic and reason. Only someone regularly "caring" for the child has the continuing opportunity to inflict these types of injuries; an isolated contact with a vicious stranger would not result in this pattern of successive injuries stretching through several months.

295 N.C. at 570, 247 S.E. 2d at 911-12.

The "battered child syndrome" is simply a medicolegal term which describes the diagnosis of a medical expert based on scientific studies that when a child suffers certain types of continuing injuries that the injuries were not caused by accidental means. Upon such a finding, it is logical to presume that someone "caring" for the child was responsible for the injuries.

We have carefully examined the entire transcript of this case and find no medical testimony indicating that Jo Van Byrd was an example of the "battered child syndrome." Therefore, the State does not have the benefit of the permissible inferences arising from testimony that a child is an example of the "battered child syndrome," that is, that the injuries suffered were intentionally inflicted by the caretakers of the child. Thus, the prosecution must rely upon other evidence to prove a violation of G.S. 14-318.2 and to support a conviction of involuntary manslaughter.

An essential element of proof under the statute is a showing that the injuries suffered by the child were inflicted "by other than accidental means." Here, the only testimonial evidence concerning accidental injury came from Dr. Butts, who stated that in his opinion a 25-day-old child could not sit up, crawl or turn over. This evidence supports an inference that the child could not have accidentally caused the injuries to *himself*. This is not, however, tantamount to a statement that *another* person could not have, or

was unlikely to have, accidentally inflicted the injuries. There simply is no direct and clear evidence that Jo Van's injuries were inflicted "other than by accidental means."

It is true that the trial judge had before him evidence that another child of defendants, YaVonka Byrd, was hospitalized on 6 December 1978 at the age of one month for injuries remarkably similar to those suffered by Jo Van. Further, there was medical testimony that YaVonka was an example of the "battered child syndrome." This evidence, then, supports an inference that *YaVonka's* injuries were inflicted by other than accidental means.

This inference cannot, however, furnish the basis for an inference that *Jo Van's* injuries were nonaccidentally inflicted. Our rule is clear that:

> A basic requirement of circumstantial evidence is reasonable inference from established facts. Inference may not be based on inference. Every inference must stand upon some clear and direct evidence, and not upon some other inference or presumption. [Citations omitted.]

*State v. Parker*, 268 N.C. 258, 262, 150 S.E. 2d 428, 431 (1966), *quoting, Lane v. Bryan*, 246 N.C. 108, 112, 97 S.E. 2d 411, 413. *See also, State v. LeDuc*, 306 N.C. 62, 78, 291 S.E. 2d 607, 617 (1982).

Applying these legal principles to the facts here presented, it is clear that the jury may not infer that Jo Van's injuries were intentionally inflicted because there was evidence to support an inference that another child had been intentionally abused. Since we cannot build an inference upon an inference in order to establish an ultimate fact upon which guilt is premised, and since there is no direct evidence that the injuries were other than accidental, the State has failed to prove the crucial element of G.S. 14-318.2 that the injuries were inflicted "by other than accidental means."

Further, the evidence in this case raises only a suspicion or conjecture that defendants were those responsible for Jo Van's injuries. There were three other adults living in the Byrd household who had the opportunity to inflict the injuries, either accidentally or intentionally. Even though YaVonka was diagnosed as suffering from the "battered child syndrome," the circumstances surrounding her injuries do not, in our opinion,

support an inference that defendants were responsible for her injuries. This is so because the record is very cloudy as to who was "caring" for YaVonka at the time her injuries occurred. We also note that even if this evidence did raise an inference that defendants intentionally harmed YaVonka, for the reasons earlier stated, the jury could not from that inference further infer that defendants inflicted injuries upon Jo Van.

Finally, the evidence presented by the prosecution is insufficient to support a conviction under G.S. 14-318.2 on the basis that defendants "created or allowed to be created a substantial risk of physical injury." The facts relating to Jo Van reveal a single incident in which the parents brought the deceased child to the hospital without visible injuries to the body. The pathologist who performed the initial autopsy found nothing indicating the injuries had been inflicted upon the child. He concluded that Jo Van died from natural causes. It is therefore entirely possible that either parent could have accidentally or intentionally inflicted the injuries without the other knowing about the incident. It is equally possible that one of the other adult occupants of the household might have inflicted the injuries, accidentally or intentionally, without either parent's knowledge.

We are forced to conclude that the evidence implicating defendants as those responsible for Jo Van's injuries, and the evidence as to whether the injuries were accidentally or intentionally inflicted, is so speculative and conjectural that defendants' motions for dismissal should have been granted.

Although not pertinent to decision in this case, we deem it appropriate to correct what we perceive to be an erroneous statement of the law in the Court of Appeals opinion.

In discussing the admissibility of evidence tending to show that defendants' other child suffered from the "battered child syndrome," a majority of the panel of the Court of Appeals articulated the following rule of law:

> [E]vidence of a separate crime is admissible to prove the crime for which a defendant is being tried if the separate crime is similar to the one for which the defendant is being tried, and was committed within a time not too far removed from the crime with which the defendant was charged.

60 N.C. App. at 629, 300 S.E. 2d at 52. We find this to be an incorrect statement of the law.

In *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954), this Court enunciated the rule that evidence of other crimes, offenses or circumstances is inadmissible if its only relevance is to show the character of the defendant or his disposition to commit an offense of the nature of the one charged. There are exceptions to this rule which allow admission of such evidence if it tends to prove knowledge, motive, plan or design, identity, connected crimes or sex offenses. *See* 1 Brandis on North Carolina Evidence, § 92 (2d ed. 1982) and cases cited therein. We find nothing in any of our cases, however, which would authorize the admission of prior crimes purely because they are "similar" and "within a time not too far removed from the crime with which the defendant [is] charged." This broad rule articulated by the Court of Appeals amounts to a total emasculation of the *McClain* rule and is expressly disavowed.

The decision of the Court of Appeals is

Reversed.