State v. Campbell

---

STATE OF NORTH CAROLINA v. JAMES EDWARD CAMPBELL

No. 8425SC988

(Filed 18 June 1985)

**Parent and Child § 2.2— felonious child abuse—insufficient evidence**

The State's evidence was insufficient to support defendant's conviction of felonious child abuse in that it failed to show an intention by defendant to cause the child serious injury where it tended to show that the two-year-old child received second and third degree burns on both hands from hot water in a bathtub while in the care of defendant, that there were clear lines of demarcation of the burns around both wrists, and that the child's hands would have to be in contact with the hot water from ten to fifteen seconds to incur such burns.

Judge WEBB dissenting.

APPEAL by defendant from *Lane, Judge.* Judgment entered 3 May 1984 in Superior Court, BURKE County. Heard in the Court of Appeals 2 April 1985.

Defendant was convicted of felonious child abuse in violation of G.S. 14-318.4. The child allegedly abused was Amanda Renee Harris, the two year old daughter of the woman with whom defendant resided. The child was normally left during the day under the defendant's sole supervision. The child's mother testified that defendant told her that he had run hot water into the bathtub to wash out a mop and that Amanda was playing in the adjoining bedroom. While the hot water was still running, he went into the kitchen area to get the mop; Amanda went into the bathtub area and reached over the tub and placed her hands into the water. Defendant heard Amanda scream, dropped the mop on the kitchen floor, went to the bathroom and saw Amanda come back up from the bathtub and fall on her rear.

Defendant applied ice to the child's burned hands, took her next door to the neighbor's and then purchased some ointment. Defendant then took the child to the emergency room at Grace Hospital where she was treated and released. Thereafter, defendant went to Amanda's mother's place of employment and explained to her what had happened. She left her job early and went home to be with her child. The next day, defendant transported the child to see a doctor for additional treatment.

Dr. Keith Forgy, who treated the child, testified that the child had suffered second and third degree emersion burns up to her wrists, leaving a clear line of demarcation around each wrist. In response to the prosecutor's question as to his opinion as to how long the child's hands would have had to have been in contact with a hot liquid to cause burns of this severity, the doctor stated:

> My opinion is certainly qualified, because you have to take into account the temperature of the liquid you're talking about. But assuming that it's not boiling hot, it would probably take a matter of at least ten to 15 seconds. If we're assuming that it's an emersion burn.

The doctor further testified that he found no other burns anywhere else on her body.

The defendant offered no evidence. From judgment imposing the presumptive sentence of two years, defendant appealed.

*Attorney General Edmisten by Associate Attorney General Victor H. E. Morgan, Jr., for the State.*

*Joe K. Byrd, Jr., for defendant-appellant.*

PARKER, Judge.

Defendant assigns as error the trial judge's denial of his motions to dismiss at the close of the State's evidence and at the conclusion of all evidence. G.S. 14-318.4 provides in pertinent part:

(a) Any parent of a child less than 16 years of age, or any other person providing care to or supervision of the child who intentionally inflicts any serious physical injury which results in:

(1) Permanent disfigurement, or

(2) Bone fracture, or

(3) Substantial impairment of physical health, or

(4) Substantial impairment of the function of any organ, limb, or appendage of such child,

is guilty of child abuse and shall be punished as a Class I felon.

There is no dispute that the minor child, Amanda Harris, age two years, suffered substantial and permanently disfiguring injuries by way of burns on her hands, while under the supervision of the defendant. Defendant argues, however, that there is no evidence that he intentionally inflicted any serious physical injury on Amanda.

On defendant's motion to dismiss, "[t]he question for the court is whether there is substantial evidence to support a jury finding that the offense charged in the bill of indictment was committed, and that the defendant was the perpetrator. . . ." *State v. Byrd*, 309 N.C. 132, 305 S.E. 2d 724 (1983). Alternately, if the evidence so considered raises no more than a suspicion or a conjecture that the offense charged in the indictment has been committed or that the defendant committed it, then the evidence is

not sufficient to carry the case to the jury. *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971).

A review of prior decisions germane to this case leads us to the conclusion that defendant's motions should have been allowed.

We note at the outset that this case does not come within the purview of the "battered child syndrome" theory discussed by our Supreme Court in *State v. Byrd, supra* and *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). As defined in *Byrd*:

> The "battered child syndrome" is simply a medicolegal term which describes the diagnosis of a medical expert based on scientific studies that when a child suffers certain types of continuing injuries that the injuries were not caused by accidental means. Upon such a finding, it is logical to presume that someone "caring" for the child was responsible for the injuries.

A finding that the alleged victim suffered from the "battered child syndrome" raises an inference that the supervising defendant intentionally inflicted the injuries suffered by the child. We have carefully examined the evidence in this case and find no medical testimony indicating that Amanda Renee Harris suffered from a "battered child syndrome." Therefore, the State does not have the benefit of the permissible inferences arising from such testimony. 309 N.C. at 138, 305 S.E. 2d at 729.

In *Byrd, supra,* defendant parents were each convicted of involuntary manslaughter in the death of their twenty-five day old son. The evidence tended to show that the victim Jo Van had a series of breaks in his ribs, which had occurred one to two weeks prior to his death, three areas of discoloration on his scalp and a severe bruise at the back of his head, the result of blunt trauma, which caused his death. There was further evidence that the defendants had an older daughter who had been removed from their custody and who had been hospitalized at the age of one month for injuries similar to those suffered by her deceased younger brother. At the conclusion of the State's evidence, each defendant moved for a dismissal. The trial judge denied the motions. Defendants offered no evidence.

Our Supreme Court noted that a violation of the child abuse statute which proximately resulted in death would support a con-

viction for manslaughter. In addition, the Court held that although the sister suffered from a battered child syndrome and her earlier injuries were reasonably similar to those suffered by Jo Van, the inference as to the nonaccidental nature of her injuries could not furnish the basis for an inference that Jo Van's injuries were nonaccidentally inflicted. Such reasoning would constitute an impermissible inference based upon an inference. 309 N.C. at 139, 305 S.E. 2d at 730. The Court concluded as follows:

> We are forced to conclude that the evidence implicating defendants as those responsible for Jo Van's injuries, and the evidence as to whether the injuries were accidentally or intentionally inflicted, is so speculative and conjectural that defendants' motions for dismissal should have been granted.

In *State v. Reber*, 71 N.C. App. 256, 321 S.E. 2d 484 (1984), defendant was convicted of felonious child abuse. The evidence showed that the alleged victim was left under the defendant father's supervision while the mother went next door to use the telephone. When the mother returned, the child was breathing erratically and later responded only to painful stimuli. In vacating his conviction, this Court held:

> To validly convict the defendant under the indictment lodged against him, the State had to prove that he intentionally inflicted a serious injury on the three and a half month old child, which resulted in the substantial impairment of the child's physical health. G.S. 14-318.4. The only element of the offense that the evidence presented tends to establish is that the child's health has been seriously impaired by an injury of some kind; it does not tend to show that the injury received by the child was inflicted by the defendant or that he inflicted such injury intentionally.

The alleged injury involved hemorrhaging of the blood vessels deep in the skull. This Court vacated the conviction, in spite of medical testimony that the child suffered from "battered child syndrome," because the verdict that defendant intentionally injured the child was based on speculation and conjecture, not evidence. 71 N.C. App. at 261, 321 S.E. 2d at 486.

The recent case of *State v. Harper*, 72 N.C. App. 471, 325 S.E. 2d 30 (1985), is clearly distinguishable from *Reber, supra,* and

*Byrd, supra.* In *Harper*, defendant was tried for felonious child abuse and three separate charges of misdemeanor contributing to the neglect of a minor. Defendant resided in a three bedroom mobile home with his three children and five relatives. Defendant's niece, who resided in the mobile home, testified that she saw the defendant strike his five year old son with a board at least ten times, until the board was broken. The next day the child was swollen in the face and eyes and had a knot on his head. There was also medical testimony that this child suffered from a kidney disease and required medication which had to be properly administered or else the child would die. The treating physician testified that when he saw the child, the child had been in relapse for at least one week because of defendant's failure to properly administer the necessary medication; that his injuries were caused by blunt trauma; and that the child was suffering a battered child syndrome. Defendant asserted on appeal that his motion to dismiss should have been granted because there was no credible evidence that he intentionally inflicted any serious physical injury on his son.

In upholding his conviction, this Court held:

> We believe the testimony of the defendant's niece and his sister that they saw him beating the child with a board, and the testimony of Dr. Irons that in his opinion the child had a battered child syndrome with the bruises to his head and eye being caused by a blunt trauma is sufficient for the jury to find the defendant intentionally inflicted serious injury to the child.

In *Harper, supra*, unlike the present case, there was competent evidence that defendant inflicted injuries upon his son from which the jury could then reasonably infer that he intended to inflict serious injury. No such direct evidence is available in the case *sub judice*. "Child abuse . . . is not the sort of act that is done openly. It is a surreptitious act. Hence, circumstantial evidence must be relied upon to prove fact." *State v. Mapp*, 45 N.C. App. 574, 264 S.E. 2d 348 (1980). However, our Supreme Court, in *State v. Rowland*, 263 N.C. 353, 358, 139 S.E. 2d 661, 665 (1965), stated:

> When the motion for nonsuit calls into question the sufficiency of circumstantial evidence, the question for the court is

whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.

Like our Supreme Court in *Byrd, supra,* we are forced to conclude in this case that the evidence as to whether the injuries were accidentally or intentionally inflicted is so speculative and conjectural that defendant's motion for dismissal should have been granted. Although the State's case was clearly based on the assumption that defendant held the child's hands in the hot water to punish her, the State has failed to present any evidence, circumstantial or otherwise, of defendant's intention to cause the child serious injury, a necessary element of the crime charged.

We, therefore, vacate the judgment of conviction and direct that a judgment of acquittal be entered.

Vacated and remanded.

Judge BECTON concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent. The evidence in this case showed that while a two-year-old child was in the care of the defendant the child received second and third degree burns on both hands. There was a clear line of demarcation of the burns around both wrists. There was testimony that the child's hands would have to be under the water from 10 to 15 seconds to incur the burns. I believe a jury would reasonably infer that the child would not hold its hands steadily under the water for 10 to 15 seconds in order to incur second and third degree burns with a clear line of demarcation on the wrists. Someone had to hold the child's hands under the water. The defendant was the only adult with the child when the child was burned. The jury could conclude from this that the defendant held the child's hands under the hot water inflicting second and third degree burns.

I vote to find no error.