Diana Pepper SEVIGNY,
Plaintiff-Appellee,

v.

Andrew F. DICKSEY, Individually,
Defendant-Appellant,

and

The Town of Carolina Beach,
Defendant (Two Cases).

Nos. 87–3550, 87–3571.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 30, 1987.
Decided May 18, 1988.

William T. Womble, Jr. (William A. Blancato; Womble, Carlyle, Sandridge & Rice, Winston–Salem, N.C., on brief), for defendant-appellant.

Auley McRae Crouch, III (Carr, Swails, Huffine & Crouch; Karen Paden Boyle; Scott, Payne, Boyle & Swart, Wilmington, N.C., on brief), for plaintiff-appellee.

Before PHILLIPS and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge.

This is an appeal from a judgment on a jury verdict in favor of the plaintiff in an action brought under 42 U.S.C. § 1983 claiming that a police officer had violated the plaintiff's fourth amendment rights by arresting her without probable cause. Following the jury verdict, which necessarily found that the arrest was made without probable cause, the district court denied defendant's motion for judgment notwithstanding the verdict based on his claim of qualified immunity. We agree with the district court's conclusion that the officer was not entitled to immunity and therefore, with one modification as to amount, affirm the judgment against the defendant.

I

The plaintiff-appellee, Diana Sevigny, is a single mother of two children. At the time of the incident giving rise to this action, her son Joey was three and one-half years old and her son Ricky was one and one-half years old. The incident occurred on the afternoon of July 29, 1984. Sevigny was preparing to take her children out as she awaited the return of a friend, Todd Whitesell, to whom she had lent her car earlier in the day. She had made plans to meet another friend, Cathy Williamson, at a movie theater with the children. Sevigny heard Whitesell drive up and left her condominium with her children. After she locked the door, however, she realized that she had forgotten her diaper bag. She told Joey to wait for her on the landing in front of her condominium and went inside to get

the bag. Whitesell had left the car keys on the floormat and was coming upstairs.

Ignoring his mother's instructions, and without her knowledge, Joey ran downstairs past Whitesell. Once downstairs, Joey got in the car, started it with the keys Whitesell had left there, and caused the car to lurch forward and crash into the garage. A neighbor heard the crash and saw Joey alone in the car. He alerted Sevigny, who came downstairs to get her son. Joey was not injured.

About an hour later, Sevigny called the Carolina Beach Police Department to report the accident. Defendant-appellant Dicksey, an officer with the Department, responded to the call. Dicksey surveyed the accident scene and questioned Sevigny, who told him what had happened. Dicksey did not believe Sevigny, and expressed his opinion that she in fact had driven the car through the garage and was trying to place the blame for the accident on her son. Neither Sevigny's continued pleading that she was telling the truth, nor Whitesell's confirmation of the story could change Dicksey's mind.

Despite Dicksey's belief that Sevigny was lying, he did not question neighbors who would have confirmed her version of the story. Dicksey did, however, speak with Cathy Williamson, who had arrived while he was conducting his investigation. Williamson verified that Joey was an active child who had previously put the car keys into the ignition. After speaking with Williamson, Dicksey told Sevigny he was going to have to arrest her and allowed her to drive to the station with Whitesell. At the station, Dicksey applied for and obtained a warrant from a magistrate that charged Sevigny with misdemeanor child abuse—a charge based upon her version of the incident; and willful and wanton damage to real property—a charge based upon his belief that Sevigny herself had actually caused the damage. Sevigny was placed in a holding cell while Whitesell attempted to post bond.[1] Dicksey also reported Sevigny to the State Department of Social Services, which resulted in an investigation of Sevigny by that agency to determine her fitness to retain custody of her children. Sevigny was released on bond some two and one-half hours after she was brought to the station. Both charges were later dismissed by the state prosecutor.

Sevigny then brought this action against Dicksey and the Town of Carolina Beach, alleging under 42 U.S.C. § 1983 an unlawful arrest in violation of her fourth amendment rights, and pendent state claims of false imprisonment and negligence on the part of Dicksey and the Town. The only issues submitted to the jury were the false imprisonment and unlawful arrest claims against Dicksey. The jury awarded Sevigny $112,000.00 in compensatory and $21,000.00 in punitive damages, finding that Dicksey had arrested her without probable cause and had falsely imprisoned her. Dicksey moved for judgment n.o.v. on the basis of his claim of qualified immunity or, alternatively, for a new trial, primarily on the grounds that the jury's verdict was excessive. The district court denied both motions. This appeal followed.

Dicksey raises several issues on appeal. Primarily he renews his post-verdict arguments that he was entitled to qualified immunity and that the jury's verdict should have been set aside as excessive. Dicksey also raises a number of other issues, mostly evidentiary points, including a claim that the district court's expert witness fee award was in excess of the amount allowed by law.

## II

We consider first Dicksey's principal contention—that he was entitled to immunity, a position rejected by the district court in denying his motion for judgment n.o.v.[2]

---

1. Dicksey did not take Sevigny before a magistrate, but bond was set at $400. Sevigny could not immediately post that amount and when Sevigny did finally contact a bondsman, Dicksey told him that Sevigny was a bad risk.

2. Dicksey moved before trial for summary judgment on immunity, among other, grounds. The district court denied the motion, and Dicksey did not then appeal the adverse immunity ruling, as may have been possible under *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d

We agree with the district court that as a matter of law he was not entitled to immunity.

At its most general level, the test of qualified immunity for executive officers is one of "objective legal reasonableness"— whether an official acting under the circumstances at issue reasonably could have believed that his action did not violate the constitutional rights asserted. *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). At the more specific level here at issue—a warrantless arrest by a police officer—the test is whether a police officer acting under the circumstances at issue reasonably could have believed that he had probable cause to arrest, i.e., to believe that the arrestee was committing or had committed a criminal offense. *See Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 3038–39, 97 L.Ed. 2d 523 (1987) (test as applied to warrantless searches and seizures); *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975) (probable cause the sole fourth amendment standard for warrantless arrests).

■ Though this test effectively allows police officers two levels of reasonable misapprehension of the constitutionality of their conduct in making arrests,[3] we readily agree with the district court that the test was not met here. We conclude instead that no police officer acting reasonably under the circumstances confronting Dicksey could have believed that he had probable cause to arrest Sevigny.

We start with the fact, as found by the jury and not challenged on this appeal, that he did not have probable cause to make the arrest. Under the *Anderson* test, that does not of course resolve the qualified immunity question. Dicksey might still be entitled to immunity if, on an objective assessment of the circumstances, an officer situated as was he reasonably could have believed that there was probable cause to arrest, i.e., to believe that Sevigny had committed criminal offenses.

As to that, our inquiry is further narrowed by Dicksey's concession on this appeal that there was no objectively reasonable basis for believing that Sevigny had committed the offense of willful and wanton damage to real property with which he alternatively charged her. He contends, however, that even so he is entitled to immunity because there was an objectively reasonable basis for believing that probable cause existed to arrest her for the other offense of misdemeanor child abuse.[4]

To make the appropriate objective inquiry at this level of concreteness, it is necessary to consider both the factual circumstances and the law involved in the probable cause equation as they should have appeared to a police officer acting reasonably under the circumstances. For the reasonableness of a belief that there was probable cause to arrest without a warrant necessarily involves the officer's perception both of the arrestee's conduct and of the offense that he considers may thereby have been committed.

■ A warrantless arrest made either because of an unreasonable misapprehension of the arrestee's conduct or of the scope of the crime thought to have been committed, or certainly of both in combination, could not be one made on the basis of

411 (1985). He properly raised the same issue, one of law for the court, by his motion for judgment n.o.v., and the court's adverse ruling on that motion presents the identical legal issue earlier presented by the summary judgment ruling.

**3.** The test, strictly parsed, comes out in the arrest context to whether it was reasonable to believe that there was a reasonable basis, i.e., probable cause, to believe that an offense had been committed. Notwithstanding the "double-counting" feature of the test as so analyzed, the Supreme Court has expressly endorsed its appli-

cation in determining immunity claims in cases charging police officers with unconstitutional searches and seizures. *Anderson*, 107 S.Ct. at 3040–42 (rejecting alternative of allowing immunity only when the search or seizure was reasonable, hence constitutional).

**4.** This contention must be considered because it is the general rule that the offense actually charged by an arresting officer does not limit the basis upon which the validity of his arrest may be upheld. *See generally* 2 W. LaFave, *Search and Seizure* § 5.1(e) (West 1978).

a reasonably held belief that the arrest was justified. But, by the same token, a reasonable belief entitling to immunity might obviously exist despite reasonable misapprehension of either conduct or law; it is precisely the function of qualified immunity in this context to excuse reasonable mistakes in making the composite factual and legal judgments leading to the arrests.

In considering the factual circumstances under which this particular arrest was made, we must therefore be concerned not with Sevigny's conduct as Dicksey may have perceived it, but as a police officer acting reasonably under the circumstances should have perceived it.[5] And in assessing the objective reasonableness of any critical misapprehension or ignorance of fact, account must be taken of any practical exigencies that prevented fuller investigation of the facts before the arrest was made.[6] In considering whether Sevigny's conduct as it should reasonably have been perceived could then reasonably have been believed to constitute a criminal offense, we must be concerned not with Dicksey's subjective understanding of the nature of the offense, but with the understanding that a reasonably informed police officer should have had of it. And in assessing the objective reasonableness of any legal misapprehension of the contours of the criminal offense thought committed, account must be taken of the degree to which the law's application was "apparent." *See Anderson,* 107 S.Ct. at 3039. By this means, proper protection is afforded the public interest reflected in the doctrine of qualified immunity—to insure vigorous performance of official duty freed from overpowering concerns for incurring personal liability for honest errors. *See Harlow,* 457 U.S. at 816–17, 102 S.Ct. at 2737–38.

Assessing Dicksey's action in arresting Sevigny in light of these principles, we are satisfied that on the evidence adduced at trial, he was not entitled to good faith immunity. We think instead that Dicksey's action in arresting Sevigny fails to measure up to the standards of objective reasonableness both in his assessment of Sevigny's conduct and in his apparent understanding of the crime which he now asserts he had a reasonable basis for believing she had committed. We take these in order.

■ When Dicksey arrested Sevigny, he was totally uncertain about what had happened. His recourse—which confirms his uncertainty—was later to charge her with two separate offenses—for whatever had occurred. Under the circumstances, these involved mutually inconsistent factual theories: that Sevigny herself had run the car into the building; that her child had done so. Both obviously could not have been proven, and any officer acting reasonably would have realized that this made the existence of probable cause for both highly questionable, if not logically impossible. Laying this possibility aside, there is the critical fact here that Dicksey did not avail himself of readily available information that would have clarified matters to the point that one of the offenses would have been flatly ruled out as factually unsup-

---

**5.** Objective inquiry into the reasonableness of an officer's perception of the critical facts leading to an arrest must obviously not take into account facts not available to him at the time. *See Anderson v. Creighton,* 107 S.Ct. at 3040 (proper inquiry is into "information possessed by the . . . officials"). By the same token, however, it must charge him with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances. Indeed his subjective beliefs about the matter, however induced, are actually "irrelevant" to the inquiry. *Id.* As the Seventh Circuit has recently put it in a case quite similar to this one, "[a] police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest." *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir.1986) (officer must be held to

knowledge of reasonably discoverable information bearing upon probable cause to arrest for child neglect).

**6.** The only basis for taking into account the "exigency" attending a warrantless arrest is this limited one: to assess the reasonableness of having arrested on the basis of a mistaken or incomplete perception of the actual facts. "Exigency" does not operate as an independent basis for warrantless arrest as it may for warrantless search. Probable cause is the only and equally valid constitutional basis for arrest with or without warrant. *See generally* 2 W. LaFave *Search and Seizure* § 5.1(b), at 224–25 (West 1978); *and see BeVier,* 806 F.2d at 127 ("probable cause is a function of information and exigency").

portable. It is evident that had Dicksey made even rudimentary inquiries of neighbors then on the scene, they would have verified Sevigny's assertion that her child, not she, had done the property damage. It is further evident that in his impatience and irritation with Sevigny, Dicksey simply did not bother to do what any police officer acting reasonably in the circumstances would have done to clarify the factual situation. There was no exigency which prevented his doing so, there being no apparent danger that were Sevigny not immediately arrested on some basis, she would somehow evade prosecution. *See supra* n. 6. Had Dicksey learned what easily could have been learned, and in common prudence should have been, there is reason to doubt that any arrest would have been made. To the extent, therefore, that Dicksey made his arrest on a misapprehension of the facts confronting him, his misapprehension was not a reasonable one.

 Turning to the offense—misdemeanor child abuse—upon which Dicksey now solely relies in asserting his immunity, we think that his apparent understanding of that offense's application to Sevigny's conduct was as plainly not an objectively reasonable one. In fairness, we must make that assessment on the basis of the facts as they should have been perceived by a police officer acting reasonably under the circumstances. This means on the basis that, as Sevigny asserted, her child had indeed driven the car into the building. Though it is evident from the record that Dicksey did not believe Sevigny's account, the fact that he nevertheless charged her with an offense based upon it would not of itself negate either the existence of probable cause or the reasonableness of a belief that it existed. The inquiry is whether, under the circumstances confronted, probable cause to arrest for some offense existed, or appeared reasonably to exist, without regard to the arresting officer's subjective perceptions of either fact or law. *See supra* n. 5.

The state misdemeanor child abuse statute, N.C.Gen.Stat. § 14–318.2(a), under which Sevigny was charged, provides:

Any parent of a child less than 16 years of age, or any other person providing care to or supervision of such child, who inflicts physical injury, or who allows physical injury to be inflicted, or who creates or allows to be created a substantial risk of physical injury, upon or to such child by other than accidental means is guilty of the misdemeanor of child abuse.

This statute describes three separate means by which a parent such as Sevigny may commit the crime of "child abuse"; all, significantly, require conduct that is *not accidental.* They include, in unambiguous terms (1) directly inflicting physical injury upon the child, (2) allowing physical injury to be inflicted upon the child, or (3) creating or allowing to be created a substantial risk of physical injury to the child. *See State v. Fredell,* 283 N.C. 242, 195 S.E.2d 300, 302 (1973). Though case law interpreting the statute is not extensive, it is settled that § 14–318.2(a) "contemplates active, purposeful conduct," *State v. Hunter,* 48 N.C.App. 656, 270 S.E.2d 120, 122 (1980), which does not reach at its outermost limits conduct that is not at least culpably negligent. *State v. Byrd,* 309 N.C. 132, 305 S.E.2d 724, 728 (1983), *overruled on limited grounds, State v. Childress,* 321 N.C. 226, 362 S.E.2d 263, 267 (1987) (to the extent that *Byrd* held that in "considering circumstantial evidence an inference may not be made from an inference ... [it is] overruled").

We agree with the district court that no police officer acting reasonably could have believed that Sevigny's conduct in failing to prevent the almost incredible, highly improbable, act by a four year old child might thereby have violated this child abuse statute. Even if the statute could reasonably be understood to reach culpably negligent as well as intentional conduct directly or indirectly inflicting injury upon, or threatening injury to, a child, there was no reasonable basis for seeing in this episode anything more than an instance of the kind of beleaguered, perhaps improvident, inattentiveness that is the occasional unhappy lot of all parents with active young children. It simply cannot be accepted that

any reasonable police officer could have understood that by this statute the state legislature intended to criminalize every parental lapse or misjudgment that creates so attenuated a risk of injury to children.

We therefore affirm the district court's rejection of Dicksey's plea of good faith immunity for the act of arresting Sevigny.

### III

Dicksey next contends that the district court abused its discretion by declining to set aside as excessive the jury's award of compensatory and punitive damages. This decision is committed in the first instance to the discretion of the district court "and indeed is one that we review with even more than ordinary deference." *Spell v. McDaniel*, 824 F.2d 1380, 1400 (4th Cir. 1987) (citations omitted). Essentially, on appeal we ask only whether the verdict is so "untoward, inordinate, unreasonable or outrageous" as to be a denial of justice to allow it to stand. *Grunenthal v. Long Island R.R.*, 393 U.S. 156, 160, 89 S.Ct. 331, 334, 21 L.Ed.2d 309 (1968). Under this standard, we cannot say that the district court abused its discretion by allowing the jury's verdict in this case to stand.

As to the compensatory award, Dicksey makes much of the fact that Sevigny only proved $3680.00 in special damages. There was also substantial evidence, however, from which the jury could, and presumably did, find that Sevigny suffered extreme emotional distress, including the anxiety of having her fitness as a parent officially investigated.

There is also ample evidence to support the award of punitive damages. There was evidence that Dicksey accused Sevigny of lying about the incident but ignored two witnesses who might have verified Sevigny's story, that he charged her with two completely inconsistent offenses without further investigation, that he interfered with her attempt to post bond, that he initiated an investigation of her care for her children, that he told her that her children would be taken away, and that he told her father that Sevigny had the whole

thing coming to her. This evidence sufficed to support the award of punitive damages under North Carolina law. *Blackwood v. Cates*, 297 N.C. 163, 254 S.E.2d 7, 10 (1979); *Ayscue v. Mullen*, 78 N.C.App. 145, 336 S.E.2d 863, 866 (1985).

### IV

Dicksey next argues that the district court erred by awarding as an item of costs an expert witness fee in excess of the $30.00 provided for by 28 U.S.C. § 1821. The district court awarded $2,589.88 as an expert witness fee for the testimony of John O'Leary who opined as a qualified expert in law enforcement that no reasonable police officer would have acted as Dicksey had in this case. Dicksey argues that the recent decision of *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, —— U.S. ——, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), prohibits a court from awarding a witness fee beyond that provided for by explicit statutory authority. Sevigny rightly counters that *Crawford* did not address whether 42 U.S.C. § 1988, the statute involved in this case, provided statutory authority for such an award. *See Crawford*, 107 S.Ct. at 2499 (Blackmun, J., concurring); *id.* at 2500 n. 1 (Marshall, J., dissenting).

Though neither side notes it in briefs, we have held that § 1988 does not provide statutory authority for the awarding of compensation for non-legal experts. *Davis v. Richmond, Fredericksburg and Potomac R.R.*, 803 F.2d 1322 (4th Cir.1986). In *Davis*, we held that the plaintiffs would have to base their claims for expert witness fees on the "general equitable powers of the court...." *Id.* at 1328. But the rule in *Davis* only takes us back to *Crawford*, which held that a court's equitable powers under Fed.R.Civ.P. 54(d) do not include the power to award witness fees beyond the statutorily prescribed amounts. *Crawford* and *Davis* in combination therefore mean that in this circuit a district court may not grant a witness fee beyond that provided for by other applicable statutes. As § 1821 provides for a fee of $30.00 per day, we must remand the case to the district court to modify the judgment accordingly.

Dicksey's other contentions are without merit and do not warrant discussion.

AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR MODIFICATION IN PART.