Rory C. HOLLAND, Plaintiff, Appellant,

v.

CITY OF PORTLAND, Sullivan Rizzo
and Bruce Coffin, Defendants,
Appellees.

No. 96–1226.

United States Court of Appeals,
First Circuit.

Heard July 29, 1996.

Decided Dec. 6, 1996.

Stuart W. Tisdale, Portland, ME, for plaintiff, appellant.

John E. Sedgewick with whom Berman & Simmons, P.A., Lewiston, ME, was on brief for defendants, appellees.

Before TORRUELLA, Chief Judge, BOUDIN, Circuit Judge, and LISI,* District Judge.

BOUDIN, Circuit Judge.

Rory Holland sued the City of Portland, Maine, and two Portland police officers, Sullivan Rizzo and Bruce Coffin, for damages and injunctive relief under 42 U.S.C. § 1983 and Maine tort law for Holland's allegedly wrongful false arrest and detention. Following discovery, the district court granted the defendants' motion for summary judgment on all of Holland's claims. Holland appeals from the court's judgment dismissing his section 1983, but not his state law, claim.

The facts, taken most favorably to Holland, are as follows. At about 1:20 p.m. on October 18, 1994, Portland police radio traffic reported a robbery at the Key Bank in Canal Plaza. The police dispatcher described the suspect as a black male, about 6′2″ tall, 185 pounds, unshaven, wearing a brown jacket, possibly suede, and a black hat, and carrying a black leather briefcase. The dispatcher reported that the suspect had fled on foot and did not indicate that any vehicle had been involved.

Shortly after 2:00 p.m. on the same day, Holland was driving a Subaru to the Cumberland County Courthouse in Portland. He drove past a bicycle patrolman, Daniel Knight, and turned the corner. Knight had heard the dispatcher's report about the robbery. When he saw the Subaru, he noticed that the driver, Holland, was a tall, thin black man wearing a brown or black jacket and a hat who appeared to meet the description of the suspect, and he also noticed that the car had no back window.

Knight reported to the police dispatcher, "Ten-twenty on Rory Holland, he's in the area." Although Knight had not met Holland, he thought that the Subaru driver fit descriptions of Holland that Knight had seen in police bulletins. The dispatcher asked if Holland's clothing matched that of the reported suspect. Knight did not respond, but the dispatcher immediately sent backup police units and indicated that the suspect was a "possible match."

After turning the corner Holland parked his car and started walking across the street towards the courthouse. He wore a brown tweed jacket and a brown leather hat, and was carrying a black nylon briefcase and a white canvas book bag. Knight stopped Holland in the crosswalk and, addressing Holland by name, said that a bank robbery had just been committed and asked where Holland had been. Knight also asked about the contents of Holland's bag. Holland remained silent.

Coffin, Rizzo, and another officer soon arrived at the scene, and the officers then walked up to Holland, backing him up to his car. Coffin was familiar with Holland's past history from information circulated within the police department and thought that the Subaru driver was Holland. Rizzo had also heard about Holland in department briefings and previously had seen a photograph of Holland. Coffin and Rizzo then began to ask Holland questions concerning the bank robbery.

Although Rizzo told Holland that he was not under arrest, and that the police just wanted to learn about the bank robbery,

* Of the District of Rhode Island, sitting by designation.

Holland remained silent. Noticing the missing rear window in Holland's car, Rizzo asked Knight if Holland had been driving. When Knight said that he had, Rizzo allegedly said, "well, then we can get him for not having a license or something or other." Rizzo then said, "Rory, you know, I can arrest you if you don't show me a valid driver's license and tell me where you live...."

Holland continued to remain silent. Rizzo asked Holland several more times to produce his license and to tell Rizzo where he lived, saying that otherwise Rizzo would arrest him "for failure to identify yourself to me." Eventually, Rizzo told Holland that he was under arrest. At that point, Rizzo and Coffin patted down Holland, removed his wallet, and found a driver's license in the wallet that identified the driver as Rory Holland. Rizzo then allegedly said, "I guess we got a license in here, I guess we can't get you for that."

Coffin and Rizzo took Holland to the Cumberland County Jail. According to Holland, some officers referred to him as a bank robbery suspect. Holland refused to speak with the booking officer or others at the jail. Holland was released on bail after the police apprehended another bank robbery suspect. Ultimately, no charges of any kind were pressed against Holland.

Thereafter, Holland brought the present suit against Rizzo, Coffin and the city. As the basis for his section 1983 claim, Holland alleged that his arrest had violated the Fourth Amendment's protection against unreasonable searches and seizures made applicable to the states through the Fourteenth Amendment. Specifically, the complaint alleged that the police lacked probable cause to arrest him for any reason, that the actual charge was a pretext to detain him for questioning about the bank robbery, and that the arrest was retaliation for his refusal to speak.

In the course of discovery Holland—who had previously been in disputes with the Portland police—learned that some weeks before the arrest, the police had circulated information about him in so-called crime alert bulletins. Knitting the bulletins together with the disputes, Holland suggested that his arrest was part of a general campaign of harassment directed against him by the police. Holland did not amend his complaint.

On January 25, 1996, the district court granted the defendants' motion for summary judgment. The district court ruled that the police had probable cause to arrest Holland for failing to identify himself or provide his license. It called the charge of harassment "hollow." And it ruled that the city was not liable because, quite apart from the lack of a municipal custom or policy, this arrest had been justified. Holland now appeals.

■ 1. On review of a grant of summary judgment, this court considers the matter *de novo*, taking the facts most favorably to the non-moving party. *St. Hilaire v. City of Laconia*, 71 F.3d 20, 24 (1st Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2548, 135 L.Ed.2d 1068 (1996). We begin by considering whether the police had probable cause to arrest Holland—that is, whether the facts known to the police indicated that Holland had committed a criminal offense. The parties agree that Holland was charged with violating 29 Me.Rev.Stat.Ann. § 2501 (later renumbered) which said:

> Whoever, while operating a vehicle in violation of this [motor vehicle regulations] Title, fails or refuses, when requested by an officer authorized to make arrests, to give the operator's correct name, address and date of birth is guilty of a Class E crime.

At first blush, the literal language might appear to make the officers' authority depend upon whether the driver was actually operating in violation of state law. But the Maine Supreme Judicial Court has interpreted section 2501 to permit an officer to stop a driver and ask his name on the basis of an articulable suspicion that the driver has done something wrong. *State v. Littlefield*, 677 A.2d 1055, 1057 (Me.1996). Indeed, even if it then becomes clear that the suspected violation had not occurred, the officer may still insist on seeing the driver's license and registration. *State v. Hill*, 606 A.2d 793, 794–95 (Me.1992).

■ Holland may not have violated any motor vehicle law by driving with a missing

rear window. But the missing rear window, or any other similar non-cosmetic damage, could reasonably create a suspicion of such a violation. *See* 29 Me.Rev.Stat.Ann. § 2503(1)(D) (requiring that motor vehicle equipment "[n]ot pose a hazard...."). Thus, when the officers asked Holland to identify himself, section 2501 required Holland to provide his name, address, and date of birth—or face arrest. *See* 17–A Me.Rev. Stat.Ann. § 15(B) (authorizing arrest for Class E crimes committed in an officer's presence).

■ Holland does not challenge the initial stop, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), nor argue that the statute itself is unconstitutional. *Cf. California v. Byers,* 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971). He instead argues that the police had no reason to request his name since they already knew it, citing *Rodriguez v. Comas,* 888 F.2d 899 (1st Cir.1989). But where the law requires the motorist to supply his name, the police can reasonably insist upon confirmation. Further, the police also sought Holland's present address, which the statute required him to provide, and there is no indication that the police had this information.

Holland's reliance on *Rodriguez* is misplaced. There, Rodriguez was arrested on a charge of obstruction of justice because he declined to provide his name and address to an officer. Rodriguez was well known to the officer, and there was no separate statute—such as Maine's motor vehicle law—requiring that he provide his name and address. This court held only that the refusal could not even arguably constitute "obstruction of justice" where the refusal to provide this already-known information neither could nor did obstruct the officer's investigation. 888 F.2d at 902.

Quoting language from other cases, Holland also claims that police officers may not arrest a suspect if they can obtain the information that they seek through a reasonable investigation. *See Sevigny v. Dicksey,* 846 F.2d 953 (4th Cir.1988); *BeVier v. Hucal,* 806

F.2d 123 (7th Cir.1986). But these cases impose no such limitation; rather, they demand that officers undertake reasonable investigation to determine *whether* probable cause exists to arrest a suspect. *Sevigny,* 846 F.2d at 957–58; *BeVier,* 806 F.2d at 127. Here, Holland committed the offense in the presence of the officers.

■ 2. Although Holland devotes much of his brief to disputing the police claim of probable cause, he has a fall-back contention less easily resolved. Fairly construing his arguments, we take him to challenge the validity of his arrest even assuming probable cause (which he disputes strongly but we find to be established). In sum, he says that the police nominally arrested him for refusing to give his name and address but that this was a "pretext" because the arrest was motivated by other, more sinister objectives.

On Holland's version of events, which must be credited at this stage, *see St. Hilaire,* 71 F.3d at 24, there is reason for thinking that the police did not care much about the missing car window or Holland's failure to give his name or address. Indeed, a jury, after a full trial, might well find that the police arrested Holland for a technical violation in order to pursue their investigation into the bank robbery, suspecting Holland of complicity but perhaps lacking enough evidence to arrest him on this charge.

The term "pretext" is sometimes used, as Holland uses it here, with the assertion that the police may not make an arrest otherwise based on probable cause when their true aim is to forward some other investigation. But aside from dicta, it is hard to find recent holdings to support this proposition; one exception is the Eleventh Circuit. *United States v. Valdez,* 931 F.2d 1448, 1450–51 (11th Cir.1991). Our own circuit, like several others, has rejected the inquiry into motive. *United States v. McCambridge,* 551 F.2d 865, 869–70 (1st Cir.1977).[1]

In all events, the Supreme Court recently settled the matter in *Whren v. United States,* —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89

---

[1] To the annoyance of commentators, the dominant view in the circuits has favored a strictly objective test as to whether probable cause justifies a search or an arrest. *See* 1 LaFave, *Search and Seizure* § 1.4(e), at 120–21 & n. 61 (3d ed. 1996).

(1996), holding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at ——, 116 S.Ct. at 1774. There, the Court explicitly rejected the very test used by the Eleventh Circuit in *Valdez* which asks whether the officer "would" have made the stop or arrest absent the "other" motive. *See id.* at ——–——, 116 S.Ct. at 1774–75; *see also United States v. Robinson,* 414 U.S. 218, 221 n. 1, 94 S.Ct. 467, 470 n. 1, 38 L.Ed.2d 427 (1973) (lawful traffic violation arrest was not unconstitutional, despite claim that it was "a mere pretext for a narcotics search").

The conflicting policy concerns are obvious. On the one hand, motor vehicle operation often gives rise to fairly minor violations, making it easy for the police to find an excuse; on the other hand, the violation does provide a bright line standard while an inquiry into actual motive, directly or indirectly, invites all kinds of diversion. *See Whren,* —— U.S. at ——–——, 116 S.Ct. at 1774–75. Further, "pretextual" stops or arrests, where probable cause exists and the motive is to investigate another crime, may not seem all that sinister to the Justices, who were unanimous in *Whren.*

How far *Whren* would extend in the face of dubious motives or other constitutional concerns is a more difficult question, and one not entirely avoidable here. Holland's version of events suggests that the police aimed not only to hold him for further investigation but *also* that the arrest itself was retaliation for his refusal to answer questions about the robbery. According to Holland, after he refused to answer any questions about the bank robbery, Rizzo said that because Holland had been driving, "well, then we can get him for not having a license or something or other." Holland further asserted that Rizzo was "obviously upset and angry with me that I would not speak with him at all about the robbery."

Holland's brief barely refers to the Fifth Amendment; and the law on the relationship between police questioning and the privilege against self-incrimination is an embarrassing tangle. Historically, the privilege and police questioning were unconnected, *see* 8 Wigmore, *Evidence* § 2252, at 328–29 (McNaughton rev. ed. 1961); and the more modern blurring of lines has left unclear whether the privilege can ever be violated by such questioning where no incriminating statement is thereafter used in a proceeding. *See Wiley v. Mayor and City Council of Baltimore,* 48 F.3d 773, 777–78 (4th Cir.) (Powell, J.) *cert. denied,* —— U.S. ——, 116 S.Ct. 89, 133 L.Ed.2d 45 (1995).[2]

Even if the Fifth Amendment is put to one side, the defendants do not suggest that Holland had any legal obligation to answer questions about the robbery. *Compare Brown v. Texas,* 443 U.S. 47, 52–53, 99 S.Ct. 2637, 2641–42, 61 L.Ed.2d 357 (1979). While the police did not purport to arrest Holland for refusing to cooperate, the facts might permit a jury to think that this was their underlying motivation. Yet assuming this premise, the question remains whether such a motive for an arrest otherwise justified by probable cause alters the message of *Whren.*

In our view, it does not. The police, prosecutors, and courts constantly make judgments—including decisions not to prosecute or to permit or impose a reduced sentence—based on an assessment of an individual's cooperation. The decision to arrest, where probable cause exists, is a discretionary one informed by many considerations. And any attempt to untangle the ascribed motive from a skein of others, in prompting an arrest justified by objective probable cause, would invite exactly the inquiry into police motivation condemned by *Whren.*

Actual motive sometimes does play a role in section 1983 actions. *E.g., Waters v. Churchill,* 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (discharge in retaliation for exercise of First Amendment rights). But in evaluating arrests, the Supreme Court

---

2. Of course, Holland never asserted the privilege when questioned, as is customarily required. The Supreme Court has said that this requirement may not apply in police-station questioning or like interrogation, *Minnesota v. Murphy,* 465 U.S. 420, 429–30, 104 S.Ct. 1136, 1143–44, 79 L.Ed.2d 409 (1984), but shortly thereafter it ruled that one held briefly in a traffic stop was not "in custody" for purposes of *Miranda. Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984).

has given primacy to the Fourth Amendment's own objective standards, even where other constitutional bases might be invoked. Thus, the Court recently rejected an attempt to use substantive due process as a more favorable framework for assessing a claim, at least insofar as it was deemed one for unlawful detention. *Albright v. Oliver,* 510 U.S. 266, 274–75, 114 S.Ct. 807, 813–14, 127 L.Ed.2d 114 (1994).

■ This does not mean that probable cause forecloses every possible challenge to an arrest. *Whren* itself strongly implies that an equal protection challenge to an arrest, despite probable cause existing, might yet be entertained, although the court does not say what facts would be needed to support such a challenge. —— U.S. at ——, 116 S.Ct. at 1774. An objective showing that (for example) only blacks or Asians were ever arrested for a specific, widely committed offense would pose a different case than *Whren.* *See Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

■ This brings us to Holland's final claim of ascribing an illicit motive for the arrest. It is evident from Holland's deposition that he himself thinks (based on prior incidents) that he was a target of general police harassment, resting in part on the fact he is black. But the *racial* charge is unsubstantiated by anything we can find in the record and is not directly urged in Holland's appellate brief. We note it only to stress that our decision does not reach the difficult issues that might be raised by a substantiated charge of racial discrimination. *Compare United States v. Armstrong,* —— U.S. ——, —— – ——, 116 S.Ct. 1480, 1486–88, 134 L.Ed.2d 687 (1996).

Putting aside racial motives, we note that the district court deemed the entire harassment charge unsupported and declined to discuss it at length. On the other hand, if one accepts Holland's deposition testimony, there were obviously prior incidents and some ongoing tension between Holland and the police. In addition, Holland's name had been circulated within the police department, although that standing alone would not be wrongful. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *United States v. Egemonye,* 62 F.3d 425, 428 (1st Cir.1995).

But even if assuming that a jury might think that Holland had been harassed in the past, we do not see how a reasonable jury could decide that this was the cause of his arrest in this instance. Such a charge is contradicted by Holland's own precise version of what the police said at the arrest. That version indicates that the police officers' immediate reasons for the arrest were, at worst, a belief that Holland was a suspect in the bank robbery, possibly aggravated by his refusal to cooperate or disclose his whereabouts at the time.

We must say in candor that Holland would have an uphill road to climb even if he had plausibly claimed that some general police animosity lay behind this arrest. Given *Whren,* any plaintiff is going to have difficulty in using subjective motive to attack an arrest which is otherwise objectively justified by probable cause. But the variations in facts, and certain extreme possibilities, caution against deciding too much in the abstract.

■ 3. The claim of municipal liability in this case depended on Holland's claim that the officers violated Holland's constitutional rights by arresting him as a part of their campaign of harassment. Holland sought to implicate the city, under *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978), by charging that the harassment grew out of an officially established program of targeting suspects, including the circulation of information about them.

Whatever "custom or policy" the city may have maintained toward individuals that the police deemed suspicious, Holland cannot show that it was "the cause of, and moving force behind," his arrest in this case. *Foley v. City of Lowell,* 948 F.2d 10, 14 (1st Cir. 1991). Further, we have concluded that the arrest was itself lawful because probable cause existed and Holland has offered no supported basis for overcoming *Whren.*

Thus, the claim against the city was properly dismissed.

*Affirmed.*